E-FILED
Tuesday, 21 September, 2004  04:27:31 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JOSHUA B. STROTHEIDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 04-3104 |
| v. | ) | |
| | ) | CIVIL ACTION |
| SPRINGFIELD PARK DISTRICT, | ) | |
| a municipal corporation, and | ) | JUDGE JEANNE E. SCOTT |
| ROBERT RUSCIOLELLI and | ) | |
| JEFF SMITH in both their individual | ) | MAG. JUDGE CHARLES H. EVANS |
| and official capacities as | ) | |
| Springfield Park District Police Officers, | ) | |
| | ) | |
| Defendants. | ) | |

RESPONSE TO
MOTION TO DISMISS COUNT I AND COUNT II
OF COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, JOSHUA B. STROTHEIDE, by his attorney, Scott B. Sievers of Donald M. Craven, P.C., and for his Response to Motion to Dismiss Count I and Count II of Complaint and Demand for Jury Trial does state the following:

procedure

    I.    **PLAINTIFF'S COMPLAINT SHOULD NOT BE DISMISSED, AS HE CAN PROVE A SET OF FACTS SUPPORTING HIS CLAIM WHICH WOULD ENTITLE HIM TO RELIEF.**

Defendants bring their motion to dismiss Plaintiff's Complaint and Demand for Jury Trial pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure alleging failure to state a claim upon which relief can be granted.

On such a motion, the court must accept the material allegations of the complaint as true, and must liberally construe the complaint in favor of the plaintiff. *E.g., Jenkins v. McKeithen*,

395 U.S. 411, 421-422 (1969). Mere vagueness or lack of detail is an inadequate basis for granting a motion to dismiss. *McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992). Detailed factual allegations are not essential under the notice pleading concept of federal practice. *Int'l Adm'rs, Inc. v. Life Ins. Co.,* 553 F. Supp. 82, 85 (N.D. Ill. 1982). Ambiguities in complaints in federal court should be interpreted in favor of plaintiffs, not defendants. *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992). To survive a motion to dismiss, a complaint need only contain enough to allow the court and defendants to understand the gravamen of the plaintiff's complaint. *McCormick v. City of Chicago*, 230 F.3d 319, 323 -324 (7th Cir. 2000). Where an infringement of a constitutionally protected liberty is alleged, it is essential that a plaintiff be afforded a reasonable opportunity to prove facts which, taken together, state a claim. *Craft v. Bd. of Trs.*, 516 F. Supp. 1317, 1323 (N.D. Ill. 1981). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *E.g., Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

    **II.**    **THE PLAINTIFF HAD A FIRST AMENDMENT RIGHT TO TAKE PHOTOGRAPHS, AND THERE IS NO INVASION OF PRIVACY IN PHOTOGRAPHING ANYTHING OR ANYONE IN PUBLIC VIEW.**

Defendants call into question the right to take photographs of subjects in a public park. Their questioning is ludicrous.

Public places historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered "public forums." *U.S. v. Grace*, 461 U.S. 171, 177 (1983). Public parks are "quintessential public forums" *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Traditional public forum property such as public parks

"occupies a special position in terms of First Amendment protection." *U.S. v. Grace*, 461 U.S. 171, 180 (1983). Government actions restricting the freedom of expression in such forums are subject to heightened scrutiny. *Board of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 573 (1987). Further, and quite to the contrary of Defendants assertions, there certainly is a First Amendment right of access to public information. *See, e.g., Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) (access to criminal trials).

In addition, while citizens have a First Amendment right to express themselves by, say, creating photographs in the traditional public forum of a public park, *see supra*, it is not a tortious invasion of privacy to photograph even unconsenting park goers:

> On the public street, or in any other public place, the plaintiff has no legal right to be alone; and it is no invasion of his privacy to do no more than follow him about and watch him there. Neither is it such an invasion to take his photograph in such a place, since this amounts to nothing more than making a record, not differing essentially from a full written description, of a public sight which anyone would be free to see.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 117 (5th ed. 1984) (footnotes omitted); *see also Wolfson v. Lewis*, 924 F. Supp. 1413, 1420 (E.D. Pa. 1996) ("[T]aking a photograph of a person who can be observed from a public vantage point . . . is not generally an invasion of privacy.").

While certain uses of photographs of non-consenting park goers can be tortious, *see, e.g.,* Restatement (Second) of Torts § 652C (appropriation), it is not illegal to photograph people in public parks regardless of their consent, and the infringement of such expressive activity in a public forum implicates the First Amendment:

> [A]ny interference with a person's conduct and actions, that are not of themselves unlawful, is the violation of a civil right. **The operation of a camera is a lawful act and a citizen's privilege to take pictures, unless made specifically unlawful by statute, is such a civil right as is protected by the Constitution of the United States.** In fact, the whole spirit and purpose of our United States Government is such that laws declaratory of civil rights need no written constitutional basis.

*U.S. v. Gugel*, 119 F. Supp. 897, 898 (D. Ky. 1954) (emphasis added); *see also Williamson v. Mills*, 65 F.3d 155 (11th Cir. 1995) ("Taking photographs at a public event is a facially innocent act."); *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000) (holding plaintiffs had First Amendment right to photograph or videotape police conduct).

The Defendants argue that the Plaintiff was wrong when he told Defendants Rusciolelli and Smith that he had a right to take photographs in a public place and even through the window of a person's home. Defs.' Mem. at 5. The Defendants, however, are the ones who are wrong.

There is no liability for taking someone's "photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye." Restatement (Second) of Torts § 652B cmt. c (1977). This principle has been applied in a variety of scenarios, each underscoring that it is no invasion of privacy to observe or photograph someone or something in the public view: *Aisenson v. ABC, Inc.*, 269 Cal. Rptr. 379 (Cal. Ct. App. 1990) (videotaping of judge from public street while judge walked down driveway of home to his car not an invasion of privacy, as judge "in full public view from the street at the time he was videotaped."); *Wehling v. CBS*, 721 F.2d 506 (5th Cir. 1983) (telecast of plaintiffs' home not an invasion of privacy, as "'the broadcast provided the public with nothing more than could have been seen from a public street.'"); *Bisbee v. John C. Conover Agency, Inc.*, 452 A.2d 689 (N.J. Super. Ct. App. Div. 1982) (photograph of plaintiffs' home not an invasion of privacy, as it was

4

"taken from the street, a public thoroughfare, and merely represented a view which is available to any bystander."); *Jaubert v. Crowley Post-Signal*, 375 So.2d 1386 (La. 1979) (photograph of plaintiffs' home taken from public street and accompanied with caption describing home as "a bit weatherworn and unkempt" not an invasion of privacy).

In fact, the U.S. District Court for the District of Maryland has even held that it is no invasion of privacy to photograph a woman through the window of her home, as the "photograph was not taken in a private place. She was in full view of the public." *Solomon v. National Enquirer, Inc.*, 1996 WL 635384, at * 4 (D. Md. 1996); *see also Mark v. Seattle Times et al.*, 635 P.2d 1081 (Wash. 1981) (photographing interior of store and persons inside through window not an invasion of privacy where "the place from which the film was shot was open to the public and thus any passerby could have viewed the scene recorded by the camera.").

Defendants' suggestion that the Plaintiff lacked the same rights as someone employed as a photographer or news reporter is also baseless. The First Amendment rights of the media are no greater and no less than those of the general public. *See, e.g., Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 784 (U.S. 1985) (Brennan, J., Marshall, J., Blackmun, J., and Stevens, J., dissenting); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 609 (U.S. 1978). "It is not just news organizations . . . who have First Amendment rights to make and display videotapes of events—all of us, including [the plaintiff], have that right." *Lambert v. Polk County*, 723 F. Supp. 128 (S.D. Iowa 1989).

Thus, the Plaintiff had a First Amendment right to photograph whatever was in the public view, and the Defendants' conduct infringed on that right.

### III. THE PRIVACY PROTECTION ACT'S EXCLUSIVE REMEDY LANGUAGE DOES NOT BAR ALTERNATIVE ACTIONS, INCLUDING SECTION 1983 FIRST AMENDMENT CLAIMS

Defendants argue the exclusive remedy language of Section 2000aa-6(d) of the Privacy Protection Act bars Plaintiff's Section 1983 First Amendment claim. Defs.' Mem. at 5. While Defendants cite other statutes and other cases construing other statutes, they fail to cite authority construing the PPA as barring Section 1983 First Amendment claims, as no such authority exists.

However, in *Citicasters, Inc. v. McCaskill*, 883 F. Supp. 1282 (W.D. Mo. 1995) (*rev'd on other grounds*), the plaintiff brought claims under both the PPA and Section 1983. As in the case at bar, the defendants in *Citicasters* argued the PPA exclusive remedy language barred the Section 1983 claim. The court held that a PPA remedy against a government entity bars any additional recovery under the PPA from an employee or officer; however, "the court does not find that the Act provides an exclusive remedy for plaintiff's claim that precludes an alternative or additional cause of action under section 1983." *Id.* at 1292; *see also Lambert v. Polk County*, 723 F. Supp. 128 (S.D. Iowa 1989) (alleging counts under both PPA and § 1983). Plaintiff in the case at bar acknowledges he is not entitled to the additional or cumulative remedies of both a First Amendment and PPA claim, but contends he is entitled to plead the claim in the alternative. If it would help to clarify his position, Plaintiff requests leave to amend his complaint to reflect this pleading of alternative remedies.

### IV. ACTIONS UNDER THE PPA ARE NOT EXPRESSLY BARRED AGAINST INDIVIDUALS, AND THOSE BROUGHT IN OFFICIAL CAPACITIES HAVE BEEN EXPRESSLY SANCTIONED.

The Defendants further argue that a PPA action is barred against employers or officers of a governmental unit. Defs.' Mem. at 9. Such a statement goes too far. The PPA expressly

provides for an action against officers or employees of a state, 42 U.S.C. § 2000aa-6(a)(2) and does not expressly preclude an action against the employees or officers of governmental units. Plaintiff acknowledges the PPA does not expressly provide for an action against officers or employees of governmental units in their individual capacities; however, the *Citicasters* court considered a PPA action against a county prosecutor and held that such an action, brought against the prosecutor in her official capacity, was a suit against the county. "Thus, it appears the plaintiff's claim under the Privacy Protection Act against defendant McCaskill is allowed by the Act." *Citicasters*, 883 F. Supp. at 1291. Consequently, while no authority exists providing for or precluding a PPA action against officers or employees of a governmental unit in their individual capacities, there is such authority for a PPA action against such defendants in their official capacities. Again, if it would clarify the Plaintiff's position to amend his complaint to better reflect this, Plaintiff requests leave to so amend.

      **V.     THE COMPLAINT CONTAINS SUFFICIENT ALLEGATIONS THAT PARK DISTRICT CUSTOM OR PRACTICE WAS THE MOVING FORCE BEHIND THE DEPRIVATION OF PLAINTIFF'S RIGHTS.**

Defendants argue that Plaintiff's allegations are not sufficient to assert Section 1983 liability against Defendant Springfield Park District, a governmental unit. *See* Defs.' Mem. at 6-7.

Plaintiff acknowledges his complaint did not utter the seemingly magic words of "custom or policy." However, the Plaintiff contends that his complaint does state sufficient assertions alleging that the Defendant Springfield Park District's custom or practice was the moving force behind the deprivation of Plaintiff's constitutional and statutory rights: The actions against the Plaintiff while at the park were taken by not just one Park District officer but two, and two who

apparently are not partners, as they arrived in separate squad cars, Compl. at 6-9; Defendant Rusciolelli told the Plaintiff he needed a permit to take pictures in the park and advance written permission to take pictures of minors, Compl. at 6-7; the Park District filed its complaint against the Plaintiff a week after the incident in the park—surely enough time for the Park District to have evaluated whether to file the complaint at all, Compl. at 3, 9; the Park District waited until June 2 to move to dismiss its complaint—nearly two weeks after filing it in the first place and coming after it had received related requests from the Plaintiff under the Illinois Freedom of Information Act, Compl. at 9; despite the dismissal, nine months later the Plaintiff inexplicably received notice to appear in person for a first appearance on the complaint brought by the Park District, Compl. at 9; and only after receiving the Plaintiff's Illinois FOIA request did the Park District return to Plaintiff the Model Release forms and memory card confiscated from him—and the Assistant Director of Parks & Recreation did so three weeks after the incident in the park. Compl. at 9, Compl. Ex. G.

The allegations contained in the Plaintiff's complaint do not allege that one employee's one-time action violated the Plaintiff's rights, but rather that a number of Park District officers or employees acted—or failed to act—on a number of occasions, and that this conduct constituted Park District custom or practice that was the moving force behind the deprivation of Plaintiff's rights.

    **VI.**    **THE COMPLAINT DOES ALLEGE SMITH PLAYED ROLE IN DEPRIVATION OF PLAINTIFF'S RIGHTS.**

The Defendants argue the complaint does not allege improper conduct by Defendant Smith.

However, Plaintiff's complaint does allege Smith escorted the Plaintiff to the Plaintiff's car to retrieve the Model Release forms and the digital camera, Compl. at 7; Smith said the Plaintiff would not be allowed to take photographs through a person's window of his home, Compl. at 8; and that Smith told the Plaintiff the Plaintiff could go around 9:30 p.m. Compl. at 9. Smith apparently was necessary at the park, as he was dispatched there and as he did not leave upon seeing that Rusciolelli was already on scene. While perhaps not as active a participate in the incident as Rusciolelli, Smith did at all times act in concert with Rusciolelli, providing an additional body and another level of persuasion for the Plaintiff to comply with the officers in their deprivation of his rights.

### VII. PLAINTIFF'S RIGHTS WERE CLEARLY ESTABLISHED, AS MUCH OF THE AUTHORITY HAS EXISTED FOR DECADES.

Defendants argue that, if they violated Plaintiff's rights, those rights were not clearly established. Defs.' Mem. at 7. But a review of the authority stated above concerning the right to First Amendment expression such as photography in public forums including parks and the lack of any invasion of privacy for photographing subjects in public view reveals that the case law, while still applicable, is hardly new. Most of the authority is at least a couple of decades old, and readily found in either the U.S. Reports or in such ubiquitous secondary authority as the Restatement (Second) of Torts and *Prosser and Keeton on the Law of Torts*. Even the rights under the Privacy Protection Act date back more than 20 years. Consequently, the Plaintiff's constitutional and statutory rights were clearly established rights of which a reasonable person would have known.

Respectfully Submitted,

Dated: September 21, 2004

s/_____
Scott B. Sievers Bar No. 6275924
Lead Counsel for Plaintiff
Donald M. Craven, P.C.
1005 North Seventh Street
Springfield, Illinois 62702-3918
(217) 544-1777 (telephone)
(217) 544-0713 (facsimile)
scott@cravenlawoffice.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Thomas R. Davis and William R. Kohlhase, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: None.

s/_____
Scott B. Sievers
Lead Counsel for Plaintiff
Donald M. Craven, P.C.
1005 North Seventh Street
Springfield, Illinois 62702-3918
(217) 544-1777 (telephone)
(217) 544-0713 (facsimile)
scott@cravenlawoffice.com